```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA
```

JKS INVESTMENT GROUP, LLC             *      CIVIL ACTION

VERSUS                                 *      NO. 05-2462

ACKEL REAL ESTATE, LLC &              *      SECTION B(1)
TITLE DEPOT OF EASTBANK, INC.


## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment by Plaintiff, JKS Investment Group, LLC, for judgment against Defendant, Ackel Real Estate, LLC pursuant to Federal Rule of Civil Procedure 56. (Rec. Doc. No. 4). For the following reasons, **IT IS ORDERED** that the motion be **GRANTED**.

## Background

On April 12, 2005, JKS Investment Group, LLC ("JKS") and Defendant Ackel Real Estate, L.L.C. ("Ackel") entered into a purchase agreement for the sale of "Laplace Center" on the corner of Airline Highway and Hemlock Street in Laplace, Lousiana ("Purchase Agreement"). (Rec. Doc. No. 14 at Ex. "A"). JKS forwarded the Purchase Agreement to the Title Depot of Eastbank,

Inc. ("Title Depot")[1] with a $100,000.00 deposit. (Rec. Doc. No. 14 at Ex. "B").

Paragraph 4.1 of the Purchase Agreement provides, "Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer." (Rec. Doc. No. 14 at Ex. "A"). Defendant claims an agreement for purchase or sale was created. Plaintiff claims none was created.

After executing the Purchase Agreement, Defendant failed to provide certain required lease and financial information about the property within the time period specified in the Purchase Agreement. (Rec. Doc. No. 9). Among the missing documents were the complete leases for two tenants, whose combined rents totaled over 35% of the annual income of the property. (Rec. Doc. No. 9) On April 23, April 29, May 3, May 16, and May 23, 2005, Plaintiff requested this missing information from Defendant. (Rec. Doc. No. 1 at Ex. "C", "D", "G" and "H"; Rec. Doc. No. 14 at Ex. "C"). On May 24, 2005, Defendant provided the missing information, and indicated the actual rent from its largest tenant was about half of what they initially claimed. (Rec. Doc. No. 9).

Upon receipt of the missing financial and legal information, Plaintiff wrote a letter to Defendant on June 1, 2005, which

---

[1] Title Depot was voluntarily dismissed as a party to this litigation. (Rec. Doc. No. 21).

states,

> The rent roll you provided us [prior to entering into the Purchase Agreement] shows the supermarket paying $57,290 in percentage rent, in addition to the base rent of $50,556, for a total rent of $107,846. Under the written lease [received on May 24, 2005] the rent for the supermarket is capped at $63,195 annually which means the rent is $44,651 less than the amount on your rent roll. Despite Adam's statements that one of the amendments cancelled the cap, it turns out that no such amendment exists.

(Rec. Doc. No. 4 at Ex. "D"). The letter seeks a reduction in price by $44,651 or a waiver of the rent cap from the tenant. It further states, "If you are unable to provide such a written agreement and unwilling to reduce the purchase price, then our agreement is cancelled immediately, our deposit must be returned, and we should be reimbursed for our expenses caused by the misstatement." (Rec. Doc. No. 4 at Ex. "D").

In response to Plaintiff's June 1st letter, Defendant sent Plaintiff a fax on June 8, 2005, claiming they provided Plaintiff all necessary information, and after May 17, 2005, the Plaintiffs waived the right to walk away from the deal.[2] (Rec. Doc. No. 4 at

---

[2] According to emails submitted into the record by Defendants, Defendant informed Plaintiffs that a 30 day "inspection period" expired Tuesday, May 17, 2005, at 12:00 p.m. Plaintiff's responded, "We acknowledge your attached memo regarding the expiration of our 30 day inspection period as being Tuesday, May 17, 2005 at 12:00PST. We are planning to close this transaction on schedule.

Ex. "E"). Defendant further states, "let this serve as your notice that the closing will be held on June 17, 2005 at 5:00 p.m." unless Plaintiff called to schedule a different time and date. (Rec. Doc. No. 4 at Ex. "E"). Plaintiff's counsel showed-up at the closing for the purpose of protesting the Act of Sale, but Defendant was not present. (Rec. Doc. No. 4). Defendant does not dispute his counsel's failure to appear. Instead, Defendant avers he believed Plaintiff would not proceed with the sale due to Plaintiff's statement to Title Depot that JKS would not proceed with the Act of Sale (Rec. Doc. No. 14 at Ex. "E") and statements in JKS' June 1 letter to Defendant that JKS would not move forward with the purchase unless Ackel agreed with its request regarding purchase price. (Rec. Doc. No. 14).

## Law & Argument

Plaintiff seeks reimbursement of its security deposit under Paragraph 4.1 of the Purchase Agreement, which states, "Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer." (Rec. Doc. No. 14 at Ex. "A"). Plaintiff claims it did not enter into such an agreement for purchase and sale, and therefore refund of its security deposit is proper under Paragraph 4.1. (Rec. Doc. No. 4). Defendant contends the Purchase Agreement

---

Those remaining documents we requested, we ask that you forward as quickly as possible." (Rec. Doc. No. 14 at Ex. "C"). Notably, no such period is specified in the Purchase Agreement, as discussed in detail below.

contained a 30 day "inspection" or "due diligence" period, which expired on May 17, 2005, binding the parties to the sale, and precluding the refund of Plaintiff's security deposit. (Rec. Doc. No. 14).

The Purchase Agreement states, in Paragraph 1.1: "JKS . . . hereby offers to purchase the real property, hereinafter described, from the owner thereof . . . to close 30 or 45 days after the waiver or expiration of the Buyer's Contingencies . . . upon the terms and conditions set forth in this agreement." (Rec. Doc. No. 14 at Ex. "A"). One such "Buyer's Contingency" is defined in Paragraph 9.1(h):

> *Existing Leases and Tenancy Statements*. Seller shall within 10 or __ [left blank] days of the Date of Agreement provide both Buyer and Escrow Holder with legible copies of all leases, subleases or rental arrangements (collectively, "Existing Leases") affecting the property. . . Buyer has 10 days from the receipt of said Existing Leases . . . to satisfy itself with regard to the Existing Leases and any other tenancy issues.

(Rec. Doc. No. 14 at Ex. "A"). Upon notice of such Buyer's Contingency, Paragraph 9.3 allows Seller a right to cure, which if not elected by Seller, allows the Buyer to terminate the transaction. (Rec. Doc. No. 14 at Ex. "A").

In addition, the Purchase Agreement states in Paragraph 28 that,

> Buyer shall have thirty (30) days from receipt of the following items, provided they are in the possession of Seller, to approve or disapprove same. Silence shall be deemed approval.
>
> 1. Operating statements for 2002, 2003, 2004 and YTD 2005;
>
> 2. Environmental report(s);
>
> 3. Survey;
>
> 4. Building plans; and
>
> 5. Tenant Financial statements

(Rec. Doc. No. 14 at Ex. "A").

Thus, the Purchase Agreement specifies two opportunities for Buyer to disapprove of materials provided by Seller: Lease materials may be disapproved under Paragraph 9.3, and financial materials may be disapproved under Paragraph 28. These provisions further specify certain time limits within which to provide disapproval; if the Buyer fails to disapprove within the proper period, a binding agreement to purchase may arise.

Under Louisiana law, when a contract is not ambiguous, a court lacks the authority to look beyond the four corners of the document. See e.g., Taita Chemical Co., Ltd. v. Westlake Styrene

Corp., 246 F.3d 377 (5th Cir. 2001); LSA-C.C. art. 2046. A contract is "ambiguous" when it is uncertain as to parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction. See e.g., Lloyds of London v. Transcontinental Gas Pipe Line Corp., 101 F.3d 425 (5th Cir. 1996).

Defendant, in seeking to create a genuine issue of material fact, attempts to persuade this Court that a 30 day "due diligence" period expired on May 17, 2005, without Plaintiff's disapproval, binding Plaintiff to purchase the property. (Rec. Doc. No. 14). The only references to any similar period in the Purchase Agreement are Paragraph 1.1's definition of an "Expected Closing Date" of "30-45 days following the waiver or expiration" of Buyer's Contingencies, and Paragraph 28's 30 day period following receipt of certain financial statements for approval or disapproval. (Rec. Doc. No. 14 at Ex. "A"). Neither purport to be what Defendant asserts: a 30 day period, expiring May 17, 2005, after which Plaintiff is bound to purchase the property.

The fact that one party may create dispute about meaning of contractual provision does not render that provision ambiguous. E.g., Campbell v. Melton, 817 So.2d 69 (La. 2002). Neither Paragraph 1.1 nor Paragraph 28 create any fixed due diligence or inspection period, nor one expiring on May 17, 2005. On the contrary, they are dependant upon Plaintiff's receipt of certain

7

documents, which were not received by Plaintiff until May 24, 2005. (Rec. Doc. No. 4; Rec. Doc No. 1 at Ex. "I"; Rec. Doc. No. 14 at Ex. "A"). In fact, Defendant seemingly derives the May 17 date from thin air, as there is absolutely no factual basis to corroborate such a date. In support of its claim, Defendant relies not on the terms of the Purchase Agreement, but on a single, ambiguous email contending that such a 30 day "due diligence" period existed, and expired May 17, 2005. (Rec. Doc. No. 14). In an email dated May 16, 2005, Defendant wrote to Plaintiff that a 30 day "Inspection Period" expired at noon the following day, and Plaintiff responded, "We acknowledge your attached memo regarding the expiration of our 30 day inspection period as being Tuesday, May 17, 2005, at 12:00PST. We are planning to close this transaction on schedule. Those remaining documents we requested, we ask that you forward to us as quickly as possible". (Rec. Doc. No. 14 at Ex. "C"). Thus, the ambiguity before this Court is not in the terms of the Purchase Agreement, but in the email itself. The email is inconsistent with the explicit and unambiguous terms of the Purchase Agreement. The Purchase Agreement itself is clear as to the intentions of the parties: the buyer could withdraw from any obligation if the lease and financial agreements were not sufficient, so long as proper notice is given. This is further supported by the specific inclusion of typewritten Paragraph 28 to the pre-printed form agreement, which allows Buyer's disapproval over broader range of

documents than specified in the form, and firmly evidences the parties' clear intent.

To find that Defendant's supposed 30 day due diligence period actually existed, this Court would need to contort the clear terms of the Purchase Agreement to find an ambiguity where none exists. This Court is not so empowered. See e.g., Melton, 817 So.2d at 76 ("Rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of new contract when the terms express with sufficient clearness the parties' intent.") Therefore, to interpret this contract, it is improper to look beyond its four corners.

The next question becomes whether Plaintiff properly terminated the Purchase Agreement. Paragraph 1.1 begins a "30-45" day clock upon the expiration or waiver of the Buyer's Contingencies. (Rec. Doc. No. 14). Expiration certainly did not occur, as Defendant did not provide complete lease information to Plaintiffs until May 24, 2005. (Rec. Doc. No. 1 at Ex. "I"). At some point between April 12, 2005 and April 23, 2005, Defendant Seller provided to Buyer an incomplete set of leases. (Rec. Doc. No. 4). Plaintiff timely notified Defendant by letter on April 23, 2005 that, (1) the lease amendments for one tenant, Frank's Supervalu, were missing, (2) the entire lease for another tenant, First Choice Home Furnishings, was missing, and (3) amendments to

the lease for a third tenant, Dollar General, were missing. (Rec. Doc. No. 1 at Ex. "C"). On or about April 28, 2005, Plaintiff emailed Defendant a reminder about the missing documents, to which Defendant responded he hoped to have the information by May 2, 2005. (Rec. Doc. No. 1 at Ex. "D"). On May 3, 2005, Plaintiff again emailed Defendant a reminder about the missing documents. (Rec. Doc. No. 1 at Ex. "G"). No such documents were forthcoming. On May 16, 2005, Plaintiff again requested the missing documents. (Rec. Doc. No. 14 at Ex. "C"). On May 23, 2005, Plaintiff once again contacted Defendant seeking the missing documents. (Rec. Doc. No. 1 at Ex. "H"). Finally, after five written requests, on May 24, 2005, Defendant submitted to Plaintiff a copy of the First Choice Lease, notice that no Supervalu lease addendum could be found, and other missing financial information. (Rec. Doc. No. 1 at Ex. "I"). Defendant presents no evidence to rebut Plaintiff's showing that it submitted the materials due to Plaintiff under Paragraphs 9.2(h) and 28 on May 24, 2005. (See Rec. Doc. No. 14).

The Purchase Agreement provides that Plaintiff has ten days from receipt of the lease documents to satisfy itself as to those leases. (Rec. Doc. No. 14 at Ex. "A"). Within such period, Plaintiff sent Defendant a letter dated June 1, 2005, expressing disapproval over the newly received information about the Supervalu lease, because it was significantly lower in value and terms from those initially stated by Defendant. (Rec. Doc. No. 4 at Ex. "D");

compare (Rec. Doc. No. 1 at Ex. "A"), with (Rec. Doc. No. 1 at Ex. "J"). Plaintiff offered two ways to cure the disapproval: (1) Defendant could provide Plaintiff with a signed agreement from Supervalu waiving a rent cap and effectively agreeing to the lease amount originally stated by Defendant, or (2) Defendant could reduce the purchase price to account for the difference between the lease's stated and actual values. (Rec. Doc. No. 4 at Ex. "D"). Defendant responded within the cure election period provided by Paragraph 9.3 of the Purchase Agreement, electing not to cure. (Rec. Doc. No. 4 at Ex. "E"). Plaintiff did not respond by June 18, 2005, constituting termination of the transaction under Paragraph 9.3 of the Purchase Agreement. (Rec. Doc. No. 4 at Ex. "E").

Likewise, waiver did not occur. Waiver occurs when, "there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." See Shaw Constructors, Inc. v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 549 (5th Cir. 2004) (citing Steptore v. Masco Constr. Co., Inc., 643 So. 2d 1213, 1216 (La. 1994)). Even construing the May 16 email in a light most favorable to the Defendant, Plaintiff's numerous requests for the missing lease documents, on April 23 and 28, and May 3, 16, and 24, in no way raise a genuine issue of material fact as to whether Plaintiff intentionally relinquished its right to terminate the Purchase

11

Agreement based on the content of those leases. For Defendant to succeed, it would have this Court accept the wholly unreasonable belief that Plaintiff waives its rights to the lease contingency in one sentence, while requesting those very same leases in the next, and binds itself to purchase a $ 3.9 Million property without reviewing the complete lease agreements of two tenants whose combined rents totaled over 35% of the annual income of the property, and whose combined square footage totaled over 43% of the leaseable space. (Rec. Doc. No. 1 at Ex. "A"). Neither this Court, nor any reasonable jury, could find in favor of the Defendant from the evidence presented.

By its own terms, the Purchase Agreement was clearly terminated when Defendant failed to cure Plaintiff's disapproval under Paragraphs 9.3 and 28. Therefore, pursuant to Paragraph 4.1, Plaintiff is entitled to the return of its $100,000.00 security deposit, plus interest, attorneys fees, and costs. See (Rec. Doc. No. 4 at Ex. "A ¶16" & "B ¶16").

For the foregoing reasons, **IT IS ORDERED** that the instant motion be **GRANTED**.

New Orleans, Louisiana, this 4th day of April, 2006.

                                                   IVAN L.R. LEMELLE
                                                   UNITED STATES DISTRICT JUDGE